IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMIE C. SCHILLING and | § | |
| KATELYN ELIZABETH BROOKS | § | |
| for themselves and all others | § | |
| similarly situated | § | |
| V. | § | A-14-CV-1049-LY |
| | § | |
| MID-AMERICA APT. COMMUNITIES, | § | |
| INC. & MID-AMERICA APTS., LP | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is the Second Motion to Dismiss of Defendants Mid-America Apartment Communities, Inc., and Mid-America Apartments, LP (Dkt. No. 18); Plaintiffs' Response (Dkt. No. 24); and Defendants' Reply (Dkt. No. 28); as well as Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. No. 32) and Defendants' Response (Dkt. No. 33). The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

**I. Factual Background**

Plaintiffs Jamie C. Schilling and Katelyn Elizabeth Brooks, who describe themselves as "boyfriend and girlfriend living together," sue their landlord, Mid-America Apartment Communities, Inc. and Mid-America Apartments, L.P. (collectively "MAA"), alleging that MAA improperly charged water connection fees in violation of the Texas Water Code. Dkt. Nos. 15, 24 at 3 n.2. Plaintiffs sue on behalf of a proposed class of current and former residential tenants of over 19,000 dwelling units in approximately 62 apartment communities in Texas where Defendants are the owner or landlord.

The Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Texas Water Code, Texas Water Code Section 13.501 *et seq.* ("the statute"), to specify how apartment owners are allowed to pass-through their water utility costs to tenants. Under the statute, an owner is prohibited from charging certain fees and other surcharges for water or wastewater. Section 13.505 of the Texas Water Code provides a private right of action for a tenant where he may recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney fees, and court costs from an owner who violates the statute. Plaintiffs are former tenants of one of MAA's apartment complexes in Austin, Texas known as "Colonial Grand at Canyon Ranch." Dkt. No. 18-4.[1]  Schilling and Brooks (as co-tenants) were parties to a lease with MAA for a one-year term starting July 7, 2013 (the "Lease"). Dkt. No. 18-4.

On April 27, 2013, as part of the lease application process, each Plaintiff signed an application and consented to credit checks. Dkt. No 18-7. In order to lock in an expiring "move-in special," MAA prepared and sent Plaintiffs an MAA form known as a "Reservation Agreement" to reserve the apartment Plaintiffs were to move into on July 7, 2013. Dkt. No. 18-3. The first line of the form identified the "Applicant(s)" as "Katelyn Brooks/Jamie Schilling." *Id.*  Only Brooks signed the Reservation Agreement, though she did place Schilling's initials on the form next to a revised figure. *Id.* In pre-printed language, under the heading "Fees and Deposits," it listed an item titled "Water Connection" with a $15 amount, followed by the phrase "Due at Move In." *Id.*  The actual lease was signed electronically by Brooks on May 23, 2013, Schilling on May 27, 2013, and Brandy Dorris for the landlord on May 28, 2013. Dkt. No. 18-4 at 8. According to the Reservation Agreement, after

---

[1] At the time the Lease was signed, the complex was apparently owned by Colonial Realty Limited Partnership. Colonial and its subsidiaries merged into MAA under a plan of merger agreement dated June 3, 2013, with MAA as the surviving entity. Dkt. No. 18-8. The merger was final on October 1, 2013. *Id.*

prorating for a partial month, the first month's rent would be $588.71. Dkt. No. 18-3. The handwritten notations on the form indicate that $15 was added to this amount for "water," and then the $195.00 good faith deposit to hold the apartment was deducted, leaving a remaining balance of $408.71, which is listed on the form as the "total due at move in." *Id.* (This is the figure on the form which bears initials of both Plaintiffs.) The Plaintiffs have pled that when they moved into the apartment on July 7, 2013, they paid the $408.71, which included the $15 water connection fee.

Plaintiffs allege that the $15 water connection fee MAA collected was improper, given that submetered water/wastewater service to their unit was already established. Dkt. No. 15 at ¶ 27. Plaintiffs contend that Texas apartment owners and landlords are prohibited from charging water connection fees, water utility account activation fees, late fees in excess of 5% of the water utility bill, and other similar surcharges under Chapter 13 of the Texas Water Code and PUC/TCEQ Rules. *See, e.g.*, TEX. WATER CODE §§ 13.502-13.503; 16 TEX. ADMIN. CODE CH. 24 (formerly 30 TEX. ADMIN. CODE CH. 291). Plaintiffs plead that MAA charged improper fees for water and wastewater utilities, in the form of activation fees, water connection fees or other surcharges, in violation of the Texas Water Code. Pursuant to the Texas Water Code §13.505, Plaintiffs for themselves, and on behalf of a proposed class, seek recovery of statutory damages equal to three times the amount of all overcharges, a civil penalty of one month's rent for each Class member for each violation, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

## II. Analysis

Defendants move to dismiss the First Amended Complaint, asserting that the Court lacks subject mater jurisdiction over Plaintiffs' claims because Schilling lacks standing, and contending that Plaintiffs have failed to state a claim for which relief may be granted.

*A.    Standing*

In their original motion to dismiss, MAA sought dismissal of the case on the ground that the only plaintiff named at that time—Schilling—lacked standing to bring the case. Dkt. No. 14. Its argument was that Brooks—not Schilling—entered into the Reservation Agreement and was charged and paid the $15 fee that is at the heart of this dispute, and therefore Schilling suffered no injury in fact. A week after this motion was filed, Schilling filed her First Amended Complaint adding Brooks as a plaintiff. Dkt. No. 15. Defendants thus filed the Second Motion to Dismiss (Dkt. No. 18), and the District Court dismissed the original motion without prejudice. Dkt. No. 23. The Second Motion to Dismiss continues to assert that the case should be dismissed because Schilling has no standing, and adds that because he lacks standing, he could not amend his complaint to add Brooks as a plaintiff.

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction. When a court considers a motion challenging jurisdiction, it may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County, Texas*, 798 F.2d 736, 741 (5th Cir. 1986). Because MAA relies on evidence, its motion to dismiss is a "factual," not "facial" attack on jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Accordingly, the Court's review is not limited to the contents of the complaint, but rather the Court may consider the evidence the parties have submitted.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party asserting federal jurisdiction bears the burden of proving that he has standing to bring the case. *Alabama–Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). Article III standing requires the

4

plaintiff to show: "(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Defendants argue that Schilling did not suffer an injury in fact because he did not sign the Reservation Agreement that imposed the $15 water connection fee and because his girlfriend and roommate, Katelyn Brooks, paid the fee.

      The argument fails. First, MAA's focus on who signed the reservation form attempts to impose contract law requirements where they do not belong. As Schilling points out, he does not base his suit on the claim that the Reservation Agreement was a contract to which he was a party, and thus the fact that he did not sign the Reservation Agreement is irrelevant. The relevant question is: to whom did MAA charge the $15 fee? From the text of the form, it appears that the "Applicants" are the ones being charged the rent and other fees the form lists, and the form identifies the "Applicants" as "Katelyn Brooks/Jamie Schilling." Dkt. No. 18-3 Moreover, as Schilling points out, both he and Brooks were named on the Lease as tenants. And while MAA contends that the Reservation Agreement is the one and only document that "charged" the $15 fee, it appears to be wrong. The Lease itself states that the $408.71 figure—which all agree is the figure that contains the disputed fee—was due at move-in. Dkt. No. 18-4 at ¶ 10. By doing so, the Lease therefore also "charged" the fee. The Lease further states that "each resident is jointly and severally liable for all Lease Contract obligations." Dkt. No. 18-4 at ¶ 29. Thus MAA's Lease made both Schilling and Brooks contractually responsible for paying the $15 fee when they moved into the apartment. This is more than sufficient to establish that Schilling has standing to sue for the imposition of the $15 fee.

MAA also argues Schilling cannot prove that he paid the $15 fee. As Schilling notes, he has pled that both he and Brooks paid the fee. Dkt. No. 15 at ¶ 26 (alleging that "Plaintiffs" paid the $408.71 balance due). MAA responds that the evidence shows that this claim is wrong, because Schilling was not employed during this time period, meaning that Brooks must have paid the fee. But the evidence MAA relies on for this assertion does not support MAA's claim. The only evidence for the claim is Schilling's application form, in which the "Present Employer" section is blank. Dkt. No. 18-7. But this form is dated April 27, 2013, more than two months before Schilling and Brooks paid the fee and moved into the apartment. The fact that the employment section of the application form is blank is simply too weak to support the many inferences MAA asks the Court to make—that Schilling was unemployed in April 2013 (he may have simply failed to complete this section), that he remained unemployed in July 2013, that he had no savings or other funds in July and was penniless, that he therefore did not contribute any amount to the $408.71 paid at move in, and as a result Brooks must have paid all of the $15 fee. As noted at the outset, in deciding this motion, the Court is permitted to consider the complaint supplemented by evidence submitted by the parties. The chain of speculative inferences just listed is not evidence. The only "evidence" submitted is Schilling's application form. This form proves nothing with regard to the source of the funds used to pay the $408.71 that was paid when Schilling and Brooks moved into the apartment. Because MAA has not presented any persuasive evidence to undermine what is pled in the Amended Complaint—that the Plaintiffs collectively paid the fee—the Court must rely on what has been pled in the Amended Complaint.

Having considered the pleadings and the evidence presented by the parties, the Court concludes that Schilling has adequately demonstrated that he was both charged and paid the fee in question, and suffered an injury in fact. Because Schilling had standing to file the Complaint, he also

6

had standing to amend the complaint to add Brooks as a plaintiff. MAA's motion to dismiss for lack of jurisdiction should therefore be denied.

### B.      12(b)(6) Motion

MAA also moves to dismiss pursuant to Rule 12(b)(6) arguing that Schilling has failed to state a claim upon which relief may be granted. MAA asserts that the charge of a "water connection fee" does not violate Section 13.503 of the Water Code because there are specific exceptions in the statute allowing apartments to impose a 9% service charge on submetered units, and Schilling therefore cannot state a claim upon which relief may be granted. Schilling responds that MAA did not charge a 9% service fee, but rather charged an up-front impermissible water connection fee.

In considering a motion under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal punctuation and citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

MAA assert that Plaintiffs have failed to plead a violation of the Texas Water Code. Plaintiffs' allegation is that MAA violated Section 13.503(b) of the Texas Water Code when it charged Schilling and Brooks an up-front $15 water connection fee.  Section 13.503(b) of the Texas Water Code reads in relevant part:

> In addition to other appropriate safeguards for the tenant, the rules shall require that, except as provided by this section, an apartment house owner . . . *may not impose on the tenant any extra charges, over and above the cost per gallon and any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager*, and that the rental unit or apartment house owner or manager shall maintain adequate records regarding submetering and make the records available for inspection by the tenant during reasonable business hours.

TEX. WATER CODE § 13.503(b) (Vernon Supp. 2013) (emphasis added).  Plaintiffs allege that the $15 fee they were charged and that they paid was not a "pass-through" of a fee that MAA was charged by the retail public utility.

Defendants respond that the Texas Water Code allows landlords to pass on certain service charges to tenants, and the $15 water connection fee qualifies as one such charge under the statute. Section 13.503(c) of the Texas Water Code reads in relevant part:

> Except as provided by Subsection (c-1), in addition to the charges permitted under Subsection (b), the rules shall authorize the owner or manager of . . . [an] apartment house to impose a service charge of not more than nine percent of the costs related to submetering allocated to each submetered rental or dwelling unit.

TEX. WATER CODE § 13.503(c).  Defendants argue that the $15 water connection fee qualifies as an allowable service charge under § 13.503(c) since it is not more than 9% of the water bills charged.

MAA's contention that the $15 fee for "Water Connection" is an allowable service charge fails to align with the Water Code.  The statute defines "costs related to submetering" as "water costs as well as any other applicable taxes and surcharges *that are charged by the retail public utility* to the owner or manager of . . . [an] apartment house."  TEX. WATER CODE § 13.503(d).  Thus, "costs

8

related to submetering" logically contemplates a permissible monthly surcharge based upon the amount of water actually used by the tenant and any related taxes and charges charged by the utility. This is supported by the relevant implementing regulation, outlining what must be included in a monthly water bill, including amounts due for dwelling unit base charges along with any customer service charges. 16 TEX. ADMIN. CODE § 24.125(f)(3).[2]

A "service charge," the amount of which is calculated with regard to water usage, by its nature would be related to the service rendered, and presumably would be billed monthly. It would also not apply to a tenant *before* a tenant has used any water. The one-time $15 connection fee at issue here plainly was in no way related to an amount actually charged by a public utility flowing from actual water usage, as it was charged before the tenants moved in. The fee was not a "service charge of not more than nine percent" as used in the relevant statute; it was a one time fee for "Water Connection." MAA's assertion that Plaintiffs have failed to state a claim is without merit.

### C. *Class Allegations*

MAA also seeks dismissal of the class allegations in the First Amended Complaint, contending that claim is inadequately pled pursuant to FED. R. CIV. P. 23. On May 12, 2015, the Plaintiffs filed a separate Motion to Certify this case as a class action. Dkt. No. 31. The Local Rules require that such a motion be filed in all class actions. Local Rule CV-23; Appendix A (outlining

---

[2] Defendants argue that applying Schilling's logic, a "late payment" charge on a tenant's utility bill would constitute an illegal fee whether or not attributable to the tenant's conduct, simply because that phrase appears as a prohibited charge under 16 TEX. ADMIN. CODE § 24.124(a). Dkt. No. 18 at 17. This, however, is not what the relevant statutes state. 16 TEX. ADMIN. CODE § 24.124(a) specifically prohibits charging tenants for fees billed to the owner of the property by the retail public utility for any "deposit, disconnect, reconnect, late payment, or other similar fees." 16 TEX. ADMIN. CODE § 24.125(m) provides for the assessment of late fees in the amount of 5% to tenants. In sum, owners can assess tenants a late fee when a *tenant* is late with a payment—but an owner cannot pass through to their tenants a late fee imposed on the *owner* because he was late in paying the utility.

9

the information required in a motion to certify a class action). The question of whether Plaintiffs have adequately pled the elements of a class action is more properly addressed when the District Court determines the class certification issue. The result is the same for MAA's complaint that Plaintiffs' proposed class is overly broad and unworkable.

### D.     *Motion to Amend*

On May 26, 2015, Plaintiffs filed a Motion for Leave to File Second Amended Complaint to add another plaintiff and class representative. Dkt. No. 32. Defendants oppose the amendment arguing: (1) Schilling has no standing and thus he cannot amend his complaint; (2) any amendment would be futile; and (3) granting Plaintiffs leave to amend would prejudice MAA.

Leave to amend should be freely given "when justice so requires," and there is a strong presumption in favor of permitting amendment under Rule 15(a). FED. R. CIV. P. 15(a); *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). The Supreme Court has identified five factors a court shall consider when deciding whether to permit amendment: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if the amended complaint would be subject to dismissal under Rule 12(b)(6) if filed, *i.e.*, if the complaint fails to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000).

Because the Court has determined that Schilling has standing to sue, MAA's claim that a plaintiff without standing may not file amended pleadings is inapplicable. The Court has likewise already rejected MAA's contention that Plaintiffs cannot state a claim under the Texas Water Code, so the futility argument also has no merit. Finally, MAA's argument that Plaintiffs have unduly

delayed in moving to amend and have inadequately explained the failure to include the proposed amendments in prior pleadings is unavailing. MAA has not even filed an answer yet, and there is no scheduling order in place in this case. Schilling filed the case on November 20, 2014, and after requesting and receiving more than 30 additional days to file a responsive pleading, MAA moved to dismiss the case on January 30, 2015. Dkt. No. 14. Schilling then amended the complaint to add Brooks, and MAA filed its second motion to dismiss on February 23, 2015. Dkt. No. 18. Even before the Court had ruled on that motion, Plaintiffs filed their motion seeking leave to amend. This does not constitute undue delay. And MAA fails to explain how it would be prejudiced by the addition of a plaintiff, given that this is a putative class action, and the motion to certify the class was only filed a little more than a month ago. Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. No. 32) should be granted.

### III. Recommendation

The undersigned **RECOMMENDS** that the District Judge **DENY** Defendants' Second Motion to Dismiss (Dkt. No. 18) and **GRANT** Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. No. 32).

### IV. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of July, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE